UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JEREMY STEVEN MEREDITH,

               Plaintiff,

    v.

ADA COUNTY SHERIFF'S
DEPARTMENT, DEPUTY SHERIFF
CULBERTSON, DEPUTY SHERIFF
ROE, DEPUTY SHERIFF ARNOLD,
DEPUTY SHERIFF MERCADO,

               Defendants.

Case No. 1:13-cv-00381-EJL

**MEMORANDUM DECISION AND
ORDER**

      Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC),

is proceeding pro se in this civil rights action.  Plaintiff alleges that Defendants have

violated his Fourteenth Amendment rights by their deliberate indifference to his risk of

self harm and his Fourth Amendment rights by using excessive force against him.

      Having carefully reviewed the record, the Court finds that the parties have

adequately presented the facts and legal arguments in the briefs and record and that the

decisional process would not be significantly aided by oral arguments.  Therefore, the

Court will decide the matter on the written motions, briefs and record.  D. Idaho L. Civ.

R. 7.1(d).

# BACKGROUND

Plaintiff filed this action on March 13, 2013, alleging that Defendants tortured him and that Ada County Sheriff's Office does not know how to deal with mentally ill inmates whose behavioral problems are "merely . . . symptom[s] of [their] mental illness." (Compl. at p. 2 (Dkt. 3.))  The Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and allowed Plaintiff to proceed on the following claims: (1) Fourteenth Amendment claims that Defendants Roe and Culbertson were deliberately indifferent to Plaintiff's risk of self harm; (2) Fourth and Fourteenth Amendment claims that Defendant Culbertson broke Plaintiff's hand; and (3) Fourth and Fourteenth Amendment claims that Defendant Arnold sprayed Plaintiff twice with mace.  (Dkt. 5.)

Currently pending before the Court are Plaintiff's Motion to Reconsider (Dkt. 14) and Defendants' Motion to Dismiss (Dkt. 15).

# DISCUSSION

## 1.      Plaintiff's Motion for Reconsideration

Plaintiff seeks reconsideration of the Court's finding in its Initial Review Order that Plaintiff had not stated a claim against the Ada County Sheriff's Office because he had not alleged facts from "which a factfinder could reasonably conclude that staff at the Ada County Jail were following an Ada County policy, custom, or practice when they allegedly broke Plaintiff's hand, sprayed him with mace, or watched him try to harm himself."  (Dkt. 5, p. 11.)

In his motion, Plaintiff contends that the "issue of medications being denied that

**Memorandum Decision and Order - 2**

were essential to my mental health . . . was due to policy . . . [and] was the key reason that led to the horrific event." (Dkt. 14, p. 2.)  He clarifies that "ineffective training . . . is not an issue worth arguing since it is not the key reason for the events that took place." (*Id.*)

The essence of Plaintiff's argument is that the alleged "policy" of Ada County to remove and change Plaintiff's mental health medication led to his "bad behavior" that resulted in the alleged actions taken against him by Defendants (*e.g.*, use of mace, etc.) and violated his constitutional rights.

The Court has not yet issued a final order in this case so reconsideration under Rules 59(e) or 60(b) is not appropriate.  However, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal citation omitted).  On reconsideration, the courts may correct "simple mistakes," as well as alter "decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *U.S. v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000).  However, while a court "has the power to revisit prior decisions of its own . . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 817 (1988) (citation omitted).

To state a claim against a local governmental entity, the plaintiff must allege that

the entity had a policy, custom or practice that was the moving force behind the constitutional injury. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well-settled" practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970.)) "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

To support his motion for reconsideration, Plaintiff states, "[E]vidence will show that removing me from medications they don't provide according to their policy has been the key reason for my mental health coming across as bad behavior and has led to numerous incidents of not only me being targeted and tortured but uncountable others like me that I have witnessed." (Dkt. 14, p. 2)(spelling corrected.) Plaintiff also states: "Throughout the past few years I've been in and out of Ada County jail I've experienced the same repeated problem of being put on medications and taken off medications or being switched to other medications I'm not used to taking . . . I'm not the only one I see it all the time." (Dkt. 14-1, pp. 1-2.)

The Court finds that Plaintiff has not set forth any allegations that alters its earlier decision that he has not stated a policy-based claim against Ada County. When asserting an "unofficial" policy, it must be so "persistent and widespread" that it constitutes a

"permanent and well-settled" practice. *Monell*, 436 U.S. at 691. Plaintiff has failed to provide any factual allegations that there was a policy of changing medications, or not providing medications, that was the "moving force" behind the violation of the constitutional rights that he has alleged. *See Mabe*, 237 F.3d at 1111.

Because Plaintiff has not made any allegations that indicate a manifest injustice that would warrant reconsideration of the Court's prior order, his motion to reconsider is denied.

**2.      Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies[1]**

   **A.      Standards of Law**

      **1.      *Summary Judgment***

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

---

[1]  The Court gave notice on April 24, 2014, of its intent to treat Defendants' motion as a motion for summary judgment.  (Dkt. 23.)

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be a *genuine* dispute as to a *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[2] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable

---

[2] In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## 2.  *Exhaustion of Administrative Remedies*

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[3] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have

---

[3] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

the right to bring motions addressing exhaustion of administrative remedies at the very beginning of litigation, and "disputed factual questions relevant to exhaustion[,] should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion" the Court may enter summary judgment for either the moving or the non-moving party (on the court's own motion). *Id.* at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a non-movant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at

1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding

grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

**B.     Discussion**

**1.     *Material Facts***

The facts material to the administrative exhaustion question are included within the sections below. The steps required to complete the Ada County County Grievance Process, which are published in the jail's inmate handbook, are undisputed. Where the facts concerning whether the exhaustion process was properly completed or whether an excuse for failure to complete the process are in dispute, the Court has so noted in the discussion section below.

All individuals housed at Ada County Jail are given a copy of the Ada County Jail Inmate Handbook ("Inmate Handbook") to review.  (Sarmento Aff. ¶ 3 (Dkt. 15-2.))  The grievance procedure is outlined on pages 25 through 27 of the Inmate Handbook.  (*Id*. at ¶ 4; Ex. A.)  Inmates are asked to acknowledge they have been given a copy of the Inmate Handbook to review, have taken time to familiarize themselves with the Inmate Handbook, and have asked any questions.  (*Id*. ¶ 5.)  Plaintiff signed such an

acknowledgment while in the Ada County Jail.  (*Id*. at ¶ 6, Ex. B.)  Once housed in the

jail, Inmate Handbooks are available in the dorms.  (*Id*. at ¶ 7.)  If an inmate is held in the

cell blocks, an Inmate Handbook is made available to the inmate upon request.  (*Id*.)

Ada County Jail's grievance forms are available at head count, which occurs twice

a day at 7:00 a.m. and 7:00 p.m.  (*Id*. at ¶ 8; Exs. A, C.)  Grievances must be filed within

three hours for a Class I, II or III violation and within seven days of any other incident,

decision or action.  (*Id*., Ex. A.)  If a grievance is time sensitive, an inmate can request

staff to have it entered before headcount.  (*Id*.)

The staff member who has been grieved will respond to the grievance in writing

and if the inmate is not satisfied with the response, he or she can appeal to the on-shift

supervisor.  (*Id*.)  The Lieutenant in charge of reviewing grievances at Ada County Jail

attests that if a grievance-related communication is received from an inmate no longer

housed at Ada County Jail, he will still respond to the communication per Ada County

Jail procedures.  (Sarmento Aff. ¶ 15.)

The alleged constitutional violations occurred on August 22, 2012.  On August 23,

2012, Plaintiff was given a Notice of Intent to Initiate Disciplinary Action for events

related to the incident.  (*Id*., Ex. D.)  It is indicated on this form that "inmate refused,

wants hearing."  (*Id*.)  At the bottom of the form, there is a staff note that states: "Left

custody on 8/30/2012 before hearing."  (*Id*.)

On August 29, 2012, Plaintiff filed an Inmate Grievance Form grieving the

disciplinary action and that he was denied medications that made him mentally unstable

and resulted in the incident at issue, including him strangling himself, being maced, and being left to sleep in his own "cold, wet, piss and vomit." (*Id*., Ex. E.) Plaintiff was provided a response that same date that said: "You were seen by Dr. Eliason on 8/27/12 and your concerns were addressed at that time." (*Id*.) There is no indication whether this response was accepted or appealed. However, the form indicates the grievance was "completed." (*Id*.)

After his release from custody on August 30, 2012, Plaintiff subsequently returned to Ada County Jail in January 2013. (*See* Attachments to the Compl. (Dkt. 3-2) (grievance forms filed by Plaintiff in January and February 2013.)) He filed several grievances during this time period unrelated to his current claims. (*See id.*) Plaintiff states, in response to Defendants' motion, that "they wouldn't sign or [accept] grievances for things that happened on previous stays. So I did what I could do and was allowed to do and continued to file for grievances and appeals for new issues. . ." (Dkt. 21-1.)

### 2. *Analysis*

It is uncontested that a grievance procedure existed at Ada County Jail and Plaintiff did not exhaust the grievance procedure. However, under the PLRA, an inmate is excused from the exhaustion requirement when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 922 (9th Cir. 2010).

Initially, the Court recognizes that in the grievance filed by Plaintiff, whether it was exhausted or not, there is no mention of his broken hand. (*See* Sarmento Aff., Ex. E.) Instead, he grieved the issues of being left alone to strangle himself and being maced.

Even if Plaintiff is excused from exhausting his other claims, there is no question that he did not attempt to grieve his broken hand. Without this issue being grieved, the jail had no "opportunity to resolve disputes" before being haled into court, a primary purpose behind the PLRA's exhaustion requirement. *See Jones*, 549 U.S. at 204. The Court finds that Plaintiff failed to exhaust any claims related to his broken hand and that claim is dismissed without prejudice.

Next, the Court must determine whether Plaintiff is excused from the PLRA's exhaustion requirement on his other claims. Courts have repeatedly held that an administrative remedy becomes "unavailable" for purposes of the exhaustion requirement if prison officials do not respond to a properly filed grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempt to exhaust. *See, e.g., Nunez v Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926 n. 18 (9th Cir. 2005); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

Plaintiff was released from custody on August 30, 2012, the day after he filed his grievance, and before a hearing was held on his disciplinary action. Plaintiff asserts that upon his return to Ada County Jail in early 2013, he was told he could not grieve issues from past stays. (Dkt. 21-1.) Defendants have submitted an affidavit stating that the jail would address a grievance even if the inmate was no longer housed at Ada County Jail. (Sarmento Aff. ¶ 15.)

If Plaintiff's version of the facts is true, then his ability to exhaust his grievance against Defendants based on the August 22, 2012 incident was unavailable. The fact that

he filed other grievances in early 2013 is not dispositive of whether he was told by jail staff that he could not grieve, or appeal his grievance, regarding an incident on a past stay. Where jail policies dictate that jailors have complete control over whether to hand out grievance forms, rather than making these forms more readily available to inmates, their burden to show they did not withhold a form from an inmate is somewhat higher than if inmates could obtain the forms without asking for them.

Where there are differing versions of material facts on the exhaustion defense, summary judgment on the issue is not appropriate. The Court finds there is a genuine issue of material fact regarding whether administrative remedies were "effectively unavailable" to Plaintiff because his efforts to grieve, or exhaust, the August 22, 2010 incident in question were "thwarted," thereby excusing the exhaustion requirement.

Defendants' motion is granted in part, as to the claim involving Plaintiff's broken hand, and denied in part, without prejudice, as to the remaining claims.

The next step in this litigation is either to hold a hearing on the issue of whether Plaintiff is excused from exhausting his administrative remedies, or to proceed to the merits of Plaintiff's claims. The Court concludes that the most efficient way to resolved Plaintiff's claims against Defendants is to proceed to summary judgment. Should Plaintiff's claims survive a merits-based summary judgment motion, the Court will set a hearing on the exhaustion issue before permitting Plaintiff to proceed to a jury trial.

**3. Defendants' Motion to Dismiss for Failure to State a Claim and/or Qualified Immunity**

## A.    Standard of Law Applicable to Defendants' Motion to Dismiss[4]

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A defendant may move to dismiss a complaint if that complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (alteration

---

[4] Although the Court issued a notice of intent to treat Rule 12 Motion under Rule 56 (Dkt. 23), this applied only to the portion of Defendants' motion that addressed the affirmative defense of failure to exhaust administrative remedies.  The rest of the motion is still analyzed under the Rule 12(b)(6) standard.

omitted).

The Supreme Court has identified two "working principles" that underlie this dismissal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When a court is considering a motion to dismiss, it must "'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007) (per curiam)).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386,

393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

Even if a plaintiff is able to show a violation of a constitutional right under § 1983, a defendant may still be entitled to dismissal on the basis of qualified immunity. In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether

that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. As to the second prong, whether the law was clearly established, such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 243, quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). If the public official can demonstrate he did not know, nor should he have known the relevant legal standard, then qualified immunity applies. *Harlow*, 457 U.S. at 819.

**B.     Facts**

Plaintiff states that while in the Ada County Jail he was placed on "orange status suicide watch for mental health reasons." (Pla's Aff., p. 1 (Dkt. 3-1.)) On August 22, 2012, Plaintiff began having hallucinations that bugs were crawling all over him. He asked Defendant Mercado if he could have a shower, but Mercado allegedly ignored him. (*Id.* at 1-2.) Plaintiff began yelling and screaming, banging the door of his cell, and

calling Mercado "every name in the book." (*Id*. at 2.)

About an hour later, Defendants Roe and Culbertson told Plaintiff, falsely, that they were taking him to someplace that had a shower. Instead, they took him to an empty cell. (*Id*.) Plaintiff was ordered to enter the cell, but refused and laid still. The deputies then "picked [him] up and threw [him] into the cell." (*Id*.) Plaintiff claims that they gave him a long pair of chains and that the deputies slammed the cell door, saying, "You know what to do." (*Id*.)  Plaintiff asked "why are you doing this?" to which Defendants responded "you know why" and "have fun."  (Compl., p. 3.)  Plaintiff then attempted to strangle himself and claims that Defendants Roe and Culbertson stood by and watched him "till everything went black." (Pla's Aff., p. 2.) Plaintiff woke up later to Defendant Culbertson breaking his already injured hand.[5]

Plaintiff was stripped and left in the cell "completely naked with no blanket." (*Id*. at p. 3.) Several hours later, Roe and Culbertson gave Plaintiff a smock and took him back to his original cell. Plaintiff states that the cell was extremely cold, so "he did the only thing [he] could do to stay warm, and climbed into the mattress by opening a hole and went to sleep." (*Id*.) Defendant Mercado then arrived and asked Plaintiff what he was doing. Plaintiff explained, and Mercado left, returning later with Defendant Arnold and other unknown deputies.

Defendant Arnold then ordered Plaintiff to get out of the mattress. Plaintiff replied,

---

[5] As discussed *supra*, Plaintiff did not exhaust the claim for his broken hand and that claim is dismissed.

"Just give me a blanket so I don't get sick." (*Id*.) When Arnold asked whether Plaintiff was refusing to get out of the mattress, Plaintiff said no; Arnold then allegedly sprayed Plaintiff with mace. According to Plaintiff, the chemical "had not activated fully" because his skin was dry. (*Id*.) Defendant Arnold and another officer moved Plaintiff to the shower. Plaintiff claims that the water from the shower activated the chemical and he dropped to the ground in pain. When the deputies told Plaintiff to "cuff-up," Plaintiff said, "[H]old on, I can't see." (*Id*.) He was then sprayed with mace a second time, and Plaintiff "screamed as if [he] were dying and rolled on the ground for endless minutes." (*Id*.) The deputies then brought Plaintiff back to his cell "still covered with mace." (*Id*. at p. 4.) Plaintiff was not allowed to wash himself, so he stuck his head into the toilet. The cell flooded as a result, and Defendants refused to let Plaintiff clean his cell. Plaintiff was eventually released when his family posted bail, and he fled to Mexico before he was apprehended and returned to Idaho. (*Id*. at pp. 4-5.)

### C. Analysis

#### 1. *Failure to Protect*

To state a claim of failure to protect, an inmate must allege that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Eighth Amendment. *Id.* at 828. "Deliberate indifference" requires a showing that the official was "subjectively aware of the risk." *Id*., 511 U.S. at 829. The Ninth Circuit uses the deliberate indifference standard of the

Eighth Amendment to determine whether a pretrial detainee's Fourteenth Amendment right not to be punished has been violated. *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir. 1991).

Plaintiff's allegations are sufficient to state a claim for failure to protect. Plaintiff alleges that Defendants Roe and Culbertson stood by and watched him while he attempted to strangle himself with chains. Defendants may well be correct that Plaintiff's allegations that Defendants told him to "have fun" and "you know what to do" are not sufficient, in and of themselves, to state a deliberate indifference claim. However, assuming the truth of all of his allegations, including that these Defendants stood by and did nothing while he strangled himself, Plaintiff has stated a plausible claim for relief.

The Defendants also argue they are entitled to qualified immunity. The Court concludes that it cannot be determined based on the face of the complaint itself whether qualified immunity applies. Courts have recognized that the qualified immunity defense is generally not amendable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999.) Whether Plaintiff's constitutional rights were violated and whether a reasonable official would have known their conduct was violating a clearly established right hinges on further factual development.

Discovery has yet to take place and Defendants have not filed any affidavits regarding the merits of Plaintiff's claims. The Court concludes that  Defendants'

arguments would be better addressed on summary judgment when there are sufficient facts before the Court. The filing of an earlier motion to dismiss on a procedural issue does not prevent from Defendants filing a merits-based motion for summary judgment, which may include a qualified immunity argument. Defendants' motion to dismiss the Fourteenth Amendment claims against Roe and Culbertson is denied without prejudice.

### 3.    *Excessive Force*

Claims of excessive force for an individual who is a pretrial detainee are analyzed under the Fourth Amendment's "reasonableness" standard," which requires "balancing the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053-54 (9th Cir. 2007). First, the "quantum of force" must be assessed. Second, the governmental interests at stake must be analyzed in light of the following factors: (1) the severity of the crime for which the plaintiff was arrested; (2) whether the plaintiff posed a threat to the safety of the officers or others; (3) whether the plaintiff was actively resisting arrest or attempting to flee; and (4) the availability of alternative methods of subduing the plaintiff. *Id.*

Plaintiff has stated a claim for excessive force under the Fourth Amendment. Plaintiff alleges that Defendant Arnold sprayed him twice with mace. The first time, Plaintiff claims he was trying to stay warm inside his mattress and informed Arnold he would get out if he could have a blanket, yet Arnold proceeded to spray him with mace. The second time, a short while later, after a shower seemingly to wash off the mace,

Plaintiff was told to cuff up to which he responded "hold on" and he was again sprayed with mace by Arnold. (Pla's Aff., pp. 2-3.) Assuming the truth of Plaintiff's allegations, the Court finds he has stated a plausible claim of excessive force.

With regard to Defendant Arnold's argument that the claim against him should be dismissed on the basis of qualified immunity, the Court again finds that the determination of whether qualified immunity applies is too fact-intensive to be resolved at this stage of the proceedings, when no discovery has taken place. *See Morley*, 175 F.3d at 761. The Court concludes that  Defendants' arguments would be better addressed on summary judgment. As noted above, the filing of an earlier motion to dismiss on a procedural issue does not prevent Defendants from filing a merits-based motion for summary judgment, which may include a qualified immunity argument. Defendants' motion to dismiss the Fourth Amendment claim against Arnold is denied without prejudice.

### D.    Claim for Punitive Damages

Lastly, Defendants argue that Plaintiff cannot obtain punitive damages against Defendants Culbertson, Roe and Arnold because punitive damages cannot be sought when taxpayer funds are put at risk. Defendants' argument is pieced together from a state indemnification statute, Idaho Code § 6-903, and the Supreme Court's decision in *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247 (1981). *City of Newport* held that cities are immune from punitive damages in § 1983 actions. *Id.*

This Court has previously rejected the argument that Defendants make. *See Muth v. Anderson*, 2010 WL 2525574 (D. Idaho June 29, 2012) (unpublished). In *Muth*, the

Court determined that punitive damages *are* recoverable against officers in their individual capacity. *See id*. at *5 (citing *City of Newport*, 453 U.S. 247 (1981.)) Accordingly, Plaintiff can seek punitive damages, to the extent he does seek them, against Defendants Culbertson, Roe and Arnold in their individual capacities.

## ORDER

**IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Reconsideration (Dkt. 14) is DENIED;

2) Defendants' Motion to Dismiss (Dkt. 15) is GRANTED IN PART and DENIED IN PART. Plaintiff's Fourteenth Amendment Claim against Defendant Culbertson for his broken hand is DISMISSED without prejudice for failure to exhaust.

3) Defendants shall file an Answer no later than **21 days** after entry of this Order. The Court will then issue a Scheduling Order.

DATED: **September 25, 2014**

Honorable Edward J. Lodge
U. S. District Judge